## No. A-CV-08-84

## Supreme Court of the Navajo Nation

**Navajo Skill Center, et. al., Appellants,**

vs.

**Ellen Benally, Appellee**
Decided July 14, 1986

## OPINION

*Before McCabe, Chief Justice, Tso and Bradley, Associate Justices.*

*Richard W. Hughes, Esq., Albuquerque, New Mexico for Appellants and Genevieve K. Chato, Esq., Fort Defiance, Arizona for Appellee.*

*Opinion delivered by Tso, Associate Justice.*

Appellee was employed as an instructor by the Navajo Skill Center in January, 1982. She was later promoted to Manager of Student Services. On February 18, 1983, appellee was terminated effective February 22, 1983. The termination letter was dated February 18, 1983, was signed by the Acting Executive Director, and informed appellee that she had five working days to appeal to the Board of Directors of the Navajo Skill Center. During the time appellee was employed the Skill Center established grievance procedures.

Appellee appealed and a hearing was scheduled before the Board of Directors on March 8, 1983, in Albuquerque, New Mexico. Another employee, Rosemary Benally, who was terminated at the same time also had her hearing scheduled for March 8 in Albuquerque. The appellee was informed of the hearing date on March 2. The pleadings contain statements that appellee who lived next door to Rosemary Benally requested Rosemary to arrange for legal representation. There is no indication that appellee took any other measures on her own behalf during the interval between March 2 and March 8. Appellee did not attend that scheduled hearing nor did she communicate with the Board.

On March 9 appellee was notified that the Board had upheld her termination. On March 10 appellee asked the Board to reconsider.

On April 7, 1983, appellee filed a complaint in the Crownpoint District Court against the Navajo Skill Center, and the acting Executive Director and the Board of Directors. Appellee alleged that her due process rights under the Indian Civil Rights Act and the Navajo Bill of Rights and her right of freedom of association had been violated, that the Navajo Skill Center had failed to follow the grievance procedures, and that the Board should have held their meeting in Crownpoint rather than Albuquerque.

A jury trial was held on February 1, 1984. Appellee was awarded reinstatement and back pay. The Navajo Skill Center appealed this verdict.

The appeal was allowed on two general issues: the scope of judicial review of administrative action and whether the Skill Center was immune from suit under the Sovereign Immunity Act. The Court finds that its decision on the scope of judicial review is dispositive and does not decide the issue of whether the Skill Center may assert the defense of sovereign immunity.

At the outset the Court had to determine whether the Navajo Skill Center was a governmental agency subject to the principles of administrative law.

The Navajo Skill Center was incorporated as a nonprofit corporation under the laws of New Mexico on September 8, 1982. Its purposes as stated in the Articles of Incorporation were to provide vocational educational and related services to the Navajo Tribe and others and to engage in activities that would alleviate or eliminate poverty among the Navajo people or lessen the burdens of tribal government. The Navajo Tribal Council authorized the Skill Center as a tribal entity (Navajo Tribal Council Resolution ACN-147-81). The Skill Center was established by the Navajo Nation to carry out certain governmental purposes and functions.

The government of the United States has long used corporations as agencies created to facilitate and execute governmental purposes and functions. In *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), the U.S. Supreme Court recognized that Congress may create corporations as an appropriate means for carrying out the powers of government. In *U.S. v. Doherty,* 18 F. Supp. 793 (D. Neb.), aff'd 94 F. 2d 295 (8th Cir.), cert. denied 303 U.S. 658 (1937), the court said:

"[T]he proposition that Congress has power to create a corporation as an agency of the government to fulfill governmental purposes and to endow it with powers of a private corporation is not now open to question." 18 F. Supp at 794.

Finally, the federal government in Title 5 U.S.C. (Government Organiza-

tion and Employees) recognizes that governmental corporations are administrative agencies. 5 U.S.C. § 105.

The Court holds that the Navajo Skill Center was a governmental agency subject to administrative laws and procedures.

Judicial review of administrative action is reasonable and necessary. There are certain fundamental principles that support such review. Some form of judicial review strengthens rather than weakens the administrative process. Judicial review develops the principles of fairness and due process which are necssary for the administrative body to obtain respect for and obedience of its decisions. Denial of judicial review would be a deprivation of what the courts have to offer. Judges become specialists in civil rights issues, in the interpretation of statutes, in defining and enforcing fair procedures, in determining whether findings are supported by substantial evidence, and in determining whether there has been an abuse of discretion. Finally, judicial review of administrative action is consistent with the principle and desirability of appellate review of trial court proceedings.

Judicial review of administrative action may be authorized by statute, implied in the inherent powers of the courts, or mandated by civil rights guarantees of due process and equal protection. Thus it is rare that *all* agency action is insulated from some form of judicial review. The questions then in each individual case become (1) what action is reviewable (2) when is it reviewable (3) what is the scope of review and (4) which court will do the initial reviewing.

Administrative agencies frequently are both quasi-legislative and quasi-judicial. Certain rule making and judicial type activities are committed to them along with duties of implementing and administering a program. Administrative bodies are designed for the development and application of expertise in the area committed to them.

Because administrative bodies and the courts both have judicial functions it is necessary to sort out the function of both and to distinguish when each may act. This is much like the jurisdictional levels between trial courts and appellate courts.

One of the earliest statements of divisions of functions by the U.S. Supreme Court involved the Interstate Commerce Commission. The ICC was an early administrative body and had the authority to fix rates for carriers of interstate commerce. The rate setting activities were challenged by both the carriers and the users of the carriers. In *ICC v. Union Pacific Railroad Co.,* 222 U.S. 541, 32 S. Ct. 108, 56 L. Ed. 308 (1912), the railroad challenged the power of the ICC to fix rates and the manner in which the rate was set in this particular instance. The U.S. Supreme Court said:

". . . it has been settled that the orders of the Commission are final unless (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory

power; or (3) based upon a mistake of law. But questions of fact may be involved in the determination of questions of law, so that an order, regular on its face, may be set aside if it appears that (4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power." 56 L. Ed. 308, 311.

The Court finds that the ICC case contains the statement of judicial review which is still valid. Thus, judicial review of administrative action will be whether the act was beyond or outside the power of the agency, based upon a mistake as to the applicable law, a violation of civil rights guarantees, not supported by the evidence, or the procedures were arbitrary and unreasonable.

In determining when agency actions will be reviewed, the doctrines of primary jurisdiction and exhaustion of administrative remedies have been developed. Primary jurisdiction refers to the concept that the agency should act first. Exhaustion of administrative remedies is the concept that the agency should complete its procedures before the courts interfere. The exhaustion doctrine is very sound and ultimately serves the interests of judicial efficiency and economy. The exhaustion doctrine prevents the courts from interfering until the administrative process has been concluded. This process has been committed to the administrative body by the legislature and it should be permitted to run its course. The doctrine also requires parties to attempt to redress their grievance without resorting to the courts. Lastly, the exhaustion doctrine helps prevent confusion between the courts and the administrative bodies which would arise if a party were able to seek relief in two different forums.

Because of the court's continuing duty to balance the rights and interests of all parties, however, there are times when exhaustion of administrative remedies is not required. Generally, exhaustion will not be required:

1. When the administrative remedy is inadequate. Inadequacy may include unreasonable delay of agency action, inability of the agency to come to a decision, or lack of authority to grant the relief to which the party is entitled.

2. When the complainant will suffer irreparable injury if required to exhaust administrative remedies.

3. When the agency is clearly acting or attempting to act in excess of its authority.

4. When pursuing the administrative process would be futile such as when an agency indicates that it will not consider a party's challenges to its past policies or decisions, which are of questionable legality.

In the instant case the Court can find no basis upon which the appellee should have been permitted to avoid the requirement of exhausting her administrative remedies. Further, the Court cannot ignore the situation of the co-worker who pursued her remedies and was reinstated in her job. The co-worker upon request was given a change of location and date for her hearing. The Court finds that appellee was inattentive to her own affairs and less than diligent in pursuing her own interests. In the balancing of the rights and interests of the Skill Center and the appellee this Court cannot find it unreasonable to require appellee to assume her responsibilities in protecting her own interests. The Grievance Procedures were established for the use and benefit of both the Skill Center and its employees. Neither party may arbitrarily elect not to follow them and then be allowed to resort to the courts when the results are adverse.

The Court has some questions as to exactly what the grievance procedures are and whether they were followed in the appellee's case. The Court holds, however, that the administrative body must first have the opportunity to make these determinations within the context of its own procedures. The agency was not presented with that opportunity in this case.

The decision of the Crownpoint District Court in this matter is reversed and vacated.